S

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 4:19-CR-_____ - CDL |
|---|---|---|
| v. | : | VIOLATIONS: |
|  | : | 18 U.S.C. § 371 |
| DAVID KENNEDY, | : | 41 U.S.C. § 8702(2) |
| Defendant. | : | 41 U.S.C. § 8707 |
|  | : | 18 U.S.C. § 981(a)(1)(C) |
|  | : | 28 U.S.C. § 2461(c) |

# INDICTMENT

**THE GRAND JURY CHARGES:**

## INTRODUCTION

*At all times material to this Indictment:*

### Defendant, Co-Conspirators, and Related Entities

1. Defendant **DAVID KENNEDY** ("KENNEDY") was Director of Operations for Company A, a prime contractor that was awarded a contract to renovate the Fort Benning Starship Barracks in the Middle District of Georgia and to construct a Sensitive Compartmentalized Information Facility ("SCIF") at Fort Gordon in the Southern District of Georgia. **KENNEDY** was responsible for managing various Company A projects, including the project at Fort Benning. Part of his responsibilities included the selection of subcontractors.

2. Co-conspirator Gary Hamby ("Hamby") was the owner and managing partner of Southern Atlantic Construction, LLC ("SAC"), a construction company that worked as a subcontractor for Company A on the project to renovate the Fort Benning Starship Barracks and the construction of the SCIF at Fort Gordon.

3. Co-conspirator Phillip Taylor ("Taylor") was a Company A employee who managed the project for the construction of the SCIF at Fort Gordon. Part of his responsibilities included the selection of subcontractors.

4. Alexis Development & Investments, LLC ("Alexis Development") was a shell company created by **KENNEDY**.

5. GH Construction Consultants, LLC ("GHCC") was a shell company created by Hamby.

### Fort Benning Starship Barracks Contract

6. On or about September 4, 2013, the U.S. Army Corps of Engineers, a federal agency under the Department of Defense, awarded Company A a contract to renovate the Fort Benning Starship Barracks ("Fort Benning Contract"). The Fort Benning Contract was a Multiple Award Task Order Contract for approximately $29,369,459 paid by the U.S. Army Corps of Engineers.

7. On or about May 27, 2015, **KENNEDY** caused Company A to award SAC a subcontract in the approximate amount of $537,500 for work on the Fort Benning Contract. From on or about May 13, 2015 through on or about December 16, 2015, Company A awarded to SAC a total of $1,383,306.18 through purchase orders and various contract modifications off of the original subcontract.

### Fort Gordon Sensitive Compartmentalized Information Facility Contract

8. On or about September 29, 2014, the U.S. Army Corps of Engineers awarded Company A a contract to build the Fort Gordon SCIF ("Fort Gordon SCIF Contract"). The

Fort Gordon SCIF Contract was a sole-source contract for approximately $7,771,495, paid by the U.S. Army Corps of Engineers.

9. On or about August 7, 2015, **KENNEDY** and Taylor caused Company A to award SAC a subcontract in the approximately amount of $34,623 to SAC for work on the Fort Gordon SCIF Contract.

## COUNT ONE
### (CONSPIRACY TO VIOLATE THE ANTI-KICKBACK ACT AND COMMIT WIRE FRAUD)
### [18 U.S.C. § 371]

10. From in or around February 2015, and continuing until on or about February 9, 2016, in the Columbus Division of the Middle District of Georgia and elsewhere, the Defendant,

**DAVID KENNEDY,**

along with Hamby, Taylor, and others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed to commit offenses against the United States of America, that is:

a. to violate Title 41, United States Code, Sections 8702 and 8707, by knowingly and willfully soliciting, accepting, and attempting to accept a kickback, that is, money, fees, commissions, credits, gifts, things of value, and compensation that is provided, directly and indirectly, from a subcontractor employee to a prime contractor employee, for the purpose of improperly obtaining favorable treatment in connection with a prime contract and subcontract relating to a prime contract; and

b. to violate Title 18, United States Code, Section 1343, by knowingly and with intent to defraud, intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice and attempting to do so, to transmit and cause to be transmitted, certain wire communications in interstate commerce.

## Purpose of the Conspiracy

11.   It was a purpose of the conspiracy for **KENNEDY** and his co-conspirators to unlawfully enrich themselves by, among other things: (1) soliciting and receiving kickbacks and bribes in exchange for awarding subcontracts and contract modifications to SAC for work on the Fort Benning Contract and the Fort Gordon SCIF Contract; and (2) submitting and causing to be submitted fraudulent invoices for work that SAC purportedly performed on the Fort Gordon Contract.

## Manner and Means of the Conspiracy

12.   The manner and means by which **KENNEDY** and his co-conspirators carried out the conspiracy included, but were not limited to, the following:

13.   **KENNEDY** and Hamby devised a scheme whereby **KENNEDY** would award Hamby – through his company SAC – a subcontract from Company A to work on the Fort Benning Contract. In exchange Hamby would pay **KENNEDY** kickbacks, which took the form of cash, gifts of things of value, and wire transfers.

14. **KENNEDY**, along with Hamby, extended the fraudulent scheme to a second contract – the Fort Gordon SCIF Contract.

15. **KENNEDY** and Hamby, this time bringing in Taylor, devised a scheme to award a fraudulent contract to Hamby, via SAC, in order to steal money from the approximately $300,000 that was remaining on the Fort Gordon SCIF Contract. The project had largely been completed, and under the terms of the sole-source contract, the funds remaining belonged to Company A.

16. Hamby would submit two fraudulent bids for the Fort Gordon SCIF subcontract—one from SAC and one from his shell company, GHCC—and **KENNEDY** and Taylor would award SAC the subcontract. The bids were fraudulent, in part, because SAC was not going to do any work on the contract, which all three co-conspirators knew at the time they were submitting the bids.

17. Hamby would then submit false invoices for work that was never performed, he would be paid by Company A, and Hamby would pay **KENNEDY** and Taylor kickbacks in exchange for receiving the fraudulent contract.

## Overt Acts

18. In furtherance of the conspiracy, and to accomplish its objects and purposes, at least one of the conspirators committed and caused to be committed in the Middle District of Georgia and elsewhere, at least one of the following overt acts, among others:

## Fort Benning Contract

19. **KENNEDY** and Hamby concocted this kickback scheme at a restaurant, in Columbus, Georgia in or around February 2015. At that meeting, **KENNEDY** told Hamby that he would award SAC a subcontract on the Fort Benning Contract if Hamby paid kickbacks to **KENNEDY**.

20. Shortly after the February 2015 meeting, an SAC employee purchased, using his personal funds, a box of cigars worth approximately $800, which was provided to **KENNEDY** at Fort Benning in the Middle District of Georgia, and for which the employee was reimbursed by SAC.

21. On or about February 19, 2015, **KENNEDY** incorporated Alexis Development in Tennessee.

22. On or about April 3, 2015, Hamby sent **KENNEDY** an e-mail stating that Hamby will be at Fort Benning to "walk the site and have dinner on Tuesday night." **KENNEDY** then instructed Hamby to submit a subcontracting bid to Company A for the work on the Fort Benning Contract.

23. Shortly thereafter, the SAC employee, using personal funds, made a $5,000 cash payment to **KENNEDY** at Fort Benning, which was reimbursed at a later date by SAC.

24. On or about May 27, 2015, Company A awarded SAC the subcontract for the work at Fort Benning.

25. On or about June 19, 2015, Hamby incorporated GHCC in South Carolina.

26. On or about June 22, 2015, **KENNEDY** opened a bank account at U.S. Community Credit Union in Tennessee ending in -6009 in the name of Alexis Development. Subsequently, **KENNEDY** provided Hamby with the wiring instructions for that account.

27. Between on or about July 8, 2015 and on or about July 20, 2015, **KENNEDY** proposed that Hamby open a bank account in the name of a shell company in order to send payments to **KENNEDY** because **KENNEDY** did not want the wire payments coming straight from Hamby's or SAC's bank account.

28. On or about July 20, 2015, Hamby opened a bank account ending in -7567 at South State Bank in South Carolina in the name of GHCC to send payments to **KENNEDY**.

29. From in or around July 2015 through in or around December 2015, Hamby paid **KENNEDY** approximately $254,700 in kickbacks from the GHCC account to the Alexis Development account. Over the course of the scheme, Hamby paid **KENNEDY** a total of approximately $383,000 in kickbacks. These payments included, but were not limited to the following:

| Approximate Date of Payment | Approximate Amount of Payment | Method of Payment |
|---|---|---|
| 6/17/2015 | $37,500 | Cash payment from SAC to **KENNEDY** |
| 6/26/2015 | $36,000 | Wire transfer from the SAC account in the Northern District of Georgia to Alexis Development account the Middle District of Tennessee |
| 7/8/2015 | $26,000 | Wire transfer from the SAC account in the Northern District of Georgia to Alexis Development account the Middle District of Tennessee |
| 7/24/2015 | $29,500 | Wire transfer from GHCC account in the District of South Carolina to Alexis Development account in the Middle District of Tennessee |
| 9/23/2015 | $17,000 | Wire transfer from GHCC account in the District of South Carolina to Alexis Development account in the Middle District of Tennessee |

### Fort Gordon SCIF Contract

30. In or around July 2015, **KENNEDY** learned that there was approximately $300,000 remaining on the Fort Gordon SCIF Contract, which had been awarded to Company A.

31. **KENNEDY** and Hamby, working with Taylor, concocted a plan to award SAC a subcontract for work they did not intend to be performed, in exchange for receiving kickbacks from SAC.

32. On or about July 24, 2015, **KENNEDY** emailed an SAC employee with Company A's invitation to bid on the Fort Gordon SCIF Contract, noting "Pls send to Gary [Hamby]."

33. Subsequently, on or about August 4, 2015, at Hamby's direction, the SAC employee emailed the fraudulent proposal to Company A for $34,623 of work on the Fort Gordon SCIF Contract to **KENNEDY**, which **KENNEDY** forwarded to Taylor.

34. In order to ensure SAC was awarded this subcontract, Hamby had the SAC employee email a second fraudulent work proposal from GHCC, the shell company that Hamby had created. This proposal was for approximately $38,888 and was sent to **KENNEDY** on or about August 4, 2015.

35. On or about August 7, 2015, Company A, based on the two fraudulent bids and a price analysis signed by Taylor, awarded SAC a subcontract for work on the Fort Gordon SCIF Contract.

36. On or about August 13, 2015, an SAC employee, copying Hamby, emailed a fraudulent invoice for $34,380 to **KENNEDY**, who forwarded it to Taylor. Taylor, on or about the same day, emailed a Company A finance employee the invoice, and copied **KENNEDY**. Both Taylor and **KENNEDY** knew that the SAC had not performed the invoiced work.

37. On or about August 27, 2015 and December 14, 2015, the SAC employee, copying Hamby, emailed Taylor two additional fraudulent invoices for work that was purportedly done on the Fort Gordon SCIF Contract. These invoices were for $26,372 and $18,731.

38. After SAC received payment from Company A for work purportedly performed under the Fort Gordon SCIF Contract, Hamby paid **KENNEDY** for his role in

securing the Fort Gordon SCIF Contract. These payments included, but were not limited to the following:

| Approximate Date of Payment | Approximate Amount of Payment | Method of Payment |
|---|---|---|
| 8/19/2015 | $31,000 | Wire transfer from GHCC account in the District of South Carolina to Alexis Development account in the Middle District of Tennessee |
| 9/2/2015 | $22,000 | Wire transfer from GHCC account in the District of South Carolina to Alexis Development account in the Middle District of Tennessee |

39. In exchange for Taylor's participation, **KENNEDY** paid Taylor by cash and by check. On or about the dates specified below, **KENNEDY** provided Taylor the amounts specified below in exchange for Taylor's participation in the scheme to award a fraudulent subcontract for work on the Fort Gordon SCIF Contract to SAC:

| Approximate Date of Payment | Approximate Amount of Payment | Method of Payment |
|---|---|---|
| 8/24/2015 | $4,000 | Check from Alexis Development to Taylor |
| 9/17/2015 | $2,200 | Check from Alexis Development to Taylor |
| 12/30/2015 | $6,000 | Check from Alexis Development to Taylor |

(All in violation of Title 18, United States Code, Section 371.)

## COUNT TWO
## (UNLAWFUL KICKBACKS)
## [41 U.S.C. §§ 8702(2), 8707]

40. Paragraphs 1 through 9 and 11 through 39 of this Indictment are re-alleged and incorporated by reference as if set out in full.

41. On or about April 3, 2015, in the Columbus Division of the Middle District of Georgia, the Defendant,

## DAVID KENNEDY,

Knowingly and willfully solicited, accepted, and attempted to accept a kickback, that is, money, fees, commissions, credits, gifts, gratuities, things of value, and compensation that is provided, directly and indirectly, to **KENNEDY**, as a prime contractor employee, for the purpose of improperly obtaining and rewarding favorable treatment in connection with a subcontract relating to a prime contract, to wit, **KENNEDY** solicited and accepted a $5,000 kickback from SAC for the purpose of improperly obtaining and rewarding favorable treatment in connection with SAC's performance of subcontracts and as a subcontractor for the Fort Benning Contract.

(All in violation of Title 41, United States Code, Sections 8702(2), and 8707.)

## FORFEITURE NOTICE
## [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

1. The General Allegations and the allegations of Count One of this Indictment are re-alleged and incorporated fully herein by reference for the purpose of

alleging forfeiture to the United States of America, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. Upon conviction of any conspiracy to violate Title 18, United States Code, Section 1343, as alleged in Count One of this Indictment,

### DAVID KENNEDY,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3. The property subject to forfeiture includes, but is not limited to, approximately $463,000, which represents a sum of money derived from the commission of the alleged wire fraud offenses.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), through Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL.

*s/Foreperson of the Grand Jury*
FOREPERSON OF THE GRAND JURY

CHARLES E. PEELER
UNITED STATES ATTORNEY

ROBERT ZINK
ACTING CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

Presented by:

VASANTH SRIDHARAN
TRIAL ATTORNEY, FRAUD SECTION

Filed in open court this __16__ day of __May__, AD 2019.

Deputy Clerk